# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT BLACKCLOUD,**

    **Plaintiff,**

**v.**                                                                                             **Civil Action No. 2:10cv20**
                                                                                             **(Judge Maxwell)**

**ERIC HOLDER, United States Attorney
General; HARLEY LAPPIN, Director of
Federal Bureau of Prisons; AND KUMA
DEBOO, Warden, FCI-Gilmer,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on February 17, 2010. [Dckt. 1] He was granted permission to proceed as a pauper on March 3, 2010, and paid his assessed initial partial filing fee on March 10, 2010. [Dckt. 9 & 12]

Consequently, on March 18, 2010, the undersigned conducted a review of the file, determined that summary judgment was not appropriate at that time, and directed the defendants to file an answer to the complaint. [Dckt. 13]

On May 18, 2010, the plaintiff filed a Motion to Intervene and Protect. [Dckt. 26]

On that same date, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support. [Dckt. 27 & 28] Because the plaintiff is proceeding without counsel, the Court issued a Roseboro Notice on May 20, 2010, advising the plaintiff of his right to file a response to the defendants' motion. [Dckt. 29] The plaintiff filed his response on June 7, 2010. [Dckt. 31]

## II. Contentions of the Parties

### A. The Complaint

In the complaint, the plaintiff alleges that the defendants have violated his rights under the Constitution of the United States and other federal laws. [Dckt. 1 at 3] More specifically, the plaintiff asserts that he is entitled to protection while in the care of the Bureau of Prisons ("BOP"), that he is entitled to equal protection and due process, and that he has the right to expect prison officials to follow their own rules and regulations. *Id.*

In support of his claims, the plaintiff asserts that in the early 1990's, while serving his federal sentence at the federal prison in Leavensworth, Kansas, he was approached by two FBI agents about becoming a government informant in exchange for a lesser sentence. *Id.* at 5-6. The plaintiff accepted the offer and began working as a government informant for the FBI. *Id.* at 6-7. Over the next couple of years, the plaintiff alleges that he was given various assignments as a government informant for the FBI and BOP. *Id.* at 7-8. When the time allegedly came to arrest the individuals that the plaintiff had been informing on, he asserts that he was secretly moved to another prison for his safety. *Id.* at 8. At that time, the plaintiff asserts that he was classified as "no longer safe within the Federal Prison System," and was therefore transferred to the North Dakota State Prison system. *Id.* at 8-9. Around that same time, the plaintiff was informed by the FBI that if he ever went public with this information, "he would be buried." *Id.* at 9.

For the next couple of years, the plaintiff was held in protective custody in various state prison systems. *Id.* While being held in the New Hampshire State Prison system, the plaintiff alleges that he was again approached by the FBI about working as a government informant. *Id.* This time, however, the New Hampshire State Prison system sought the plaintiff's assistance in

dealing with its drug trafficking problem. *Id.* The plaintiff again agreed to act as a government informant. *Id.* at 10. In an effort to protect himself and his wife, the plaintiff allegedly secured the aid of an attorney this time. *Id.* That attorney allegedly documented the plaintiff's cooperation agreement with the FBI and New Hampshire officials. *Id.*

After completing his work as a government informant with the New Hampshire State Prison system, the plaintiff asserts that he was again transferred to a new prison system for his protection. *Id.* While there, the plaintiff contends that a "representative from Washington, D.C." came to see him and granted him immediate release to parole. *Id.* When the plaintiff later violated his parole, he alleges that he was sent to Colorado to serve his violator sentence in protective custody. *Id.* He was later released to parole again, but as returned to custody in 2009 after another violation. *Id.* at 11.

During his 2009 parole violation proceedings, the plaintiff contends that the sentencing judge recommended that he be placed in a medical facility due to his heart condition and other health problems. *Id.* Nonetheless, the plaintiff was placed in federal custody at FCI-Gilmer. *Id.* To make matters worse, the plaintiff asserts that he was placed in the general population, despite his past history as a government informant. *Id.* at 11-12. The plaintiff contends that should he be recognized, or his past discovered, his life will be in grave danger. *Id.* at 12. Thus, after one night in the general population, the plaintiff requested placement in protective custody. *Id.* The plaintiff asserts that he was immediately moved to the special housing unit for safety reasons, and remained there for several weeks. *Id.* Nevertheless, the plaintiff was later informed that his safety claims had been investigated and that no cause was found for keeping him in protective custody. *Id.* Thus, he was ordered back into the general population. *Id.*

The plaintiff claims that both he and his family have contacted the Warden about his situation to no avail. *Id.* at 13. The plaintiff's family has also contacted the FBI for assistance. *Id.* Although they were told that the FBI would intervene on the plaintiff's behalf, they have not done so. *Id.*

The plaintiff also asserts that he has a multitude of heart problems that FCI-Gilmer refuses to address. *Id.* at 13-14. Moreover, because he is legally and physically disabled, the plaintiff asserts that others continually take advantage of him. *Id.* at 14. The plaintiff further asserts that staff have told him there is no paperwork documenting his cooperation with the government and refuse to offer him any protection. *Id.* at 14-15. In fact, the plaintiff asserts that staff is so apathetic it appears they are conspiring to have him murdered. *Id.* at 16. He asserts that they refuse to follow the applicable federal rules and policies to such an extent that he must now seek protection from the Court. *Id.* As a result, the plaintiff contends that he is forced to hide in his cell while he petitions the court for fear of being discovered and harmed. *Id.* at 18.

As relief, the plaintiff aks the Court to direct the BOP to: (1) reexamine set rules and policies in protecting classified high-level government informants; (2) immediately implement safety procedures and place him in protective custody; (3) remove him from FCI-Gilmer and place him within a medical facility within 500 miles of his family; and (4) update and document its paperwork acknowledging plaintiff's government informant status. *Id.* at 18-19. Additionally, the plaintiff seeks a jury trial and $500,000 in damages if the BOP does not act immediately. *Id.* at 19.

Because he seeks preventive relief, the plaintiff asserts that he is not required to exhaust his administrative remedies. *Id.* at 3.

**B.   The Plaintiff's Motion to Intervene and Protect**

In this motion, the plaintiff asks the Court to "intervene and protect" him, both physically and mentally. [Dckt. 26 at 1] In support of his motion, the plaintiff asserts that he needs to be removed from FCI-Gilmer and placed in a medical facility or protective custody facility. *Id.* at 2. He further asserts that Gilmer officials are compounding his situation by placing him in isolation and punishing him with loss of privileges when he has not violated any rules. *Id.* The plaintiff also contends that he has serious medical needs that are not being met at FCI-Gilmer. *Id.* He then suggests that his health issues are being ignored in retaliation of his complaints. *Id.* at 3. The plaintiff feels that it is unfair that he is being unjustly punished for helping the BOP and FBI and that the Court should intervene as a precautionary measure. *Id.* Finally, the plaintiff suggests that with the defendants' technology and expertise, they are fully aware of his undercover work and informant status and that their failure to protect him is a deliberate act of malice. *Id.*

C. **The Defendants' Motion to Dismiss or for Summary Judgment**

In their motion, the defendants assert that the plaintiff's complaint should be dismissed, or they should be granted judgment as a matter of law, for the following reasons:

(1) the plaintiff has failed to exhaust his administrative remedies;

(2) the plaintiff is not entitled to injunctive relief; and

(3) the plaintiff is not entitled to mandamus relief.

[Dckt. 28 at 2-7].

D. **The Plaintiff's Response in Opposition to the Defendants' Motion**

In his response the defendants' motion, the plaintiff asserts that it was his understanding that he would always be protected by federal authorities for his services as a government informant. [Dckt. 31 at 2] The plaintiff asserts that he is now being forced by BOP officials to re-enter the

federal prison system without such protection and alleges that he is "bound to be killed" because of it. *Id.* He also claims that his life is endangered by the negligent healthcare provided by medical staff at FCI-Gilmer and complains that the BOP has failed to follow the sentencing judge's recommendation that he be placed in a medical facility. *Id.* at 2-3. The plaintiff asserts that because of the inaction of BOP officials, he is forced to suffer in fear and that he suffers severe mental trauma and emotional distress. *Id.* at 4. The plaintiff also asserts that despite the many times he and his family have contacted BOP officials about these issues, their concerns are ignored. *Id.* Thus, he requests the Court deny the defendants' motion and allow his case to proceed. *Id.*

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but "must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.* (citations omitted), to one that is "plausible on its face," *Id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, adopted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### IV. Analysis

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). All civil actions are subject to the exhaust

8

of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741 n. 6.

Here, it is clear that the plaintiff has not exhausted his administrative remedies with regard to his claims. [Dckt. 28 at Ex. 1 and Att. 6] In fact, he concedes as much in his complaint. [Dckt. 1 at 3] However, the plaintiff asserts that because he seeks preventive relief, under 42 U.S.C. § 2000(a)(3), he is not required to exhaust his administrative remedies. *Id.* However, the plaintiff's reliance on 42 U.S.C. § 2000(a)(3) is misplaced. Title 42 U.S.C. § 2000(a) prohibits discrimination or segregation in places of public accommodation. A prison is not a place of public accommodation. Douglas v. U.S. Attorney General, 404 F. Supp. 1314 (W.D. Okla 1975). Furthermore, nothing in 42 U.S.C. § 2000a(3) can be read as relieving a prisoner of the requirements of the PLRA. Accordingly, the plaintiff claims are not exhausted and should be dismissed.

Assuming, however, that the plaintiff had exhausted his claims, those claims fail on the merits.

**B.  Merits of the Plaintiff's Claims**

    1.  Plaintiff's Request for Injunctive Relief[2]

---

[1] Porter at 524.

[2] Specifically, the plaintiff requests an Order from the Court directing the BOP to: (1) re-examine set rules and policies in protecting classified high level government informants; (2)

The standard for granting injunctive relief in this circuit is set forth in <u>Real Truth About Obama, Inc. v. Federal Election Comm'n</u>, 575 F.3d 342 (4th Cir.2009). As articulated in <u>Real Truth</u>, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* at 346 (citations omitted).

Here, as previously noted, the plaintiff cannot succeed on the merits of his claim. Moreover, the Court does not have the authority to grant the plaintiff the relief he seeks. See <u>Roberts v. O'Brien</u>, 2208 WL 2790054 *1 (W.D.Va. July 17, 2008) (citing <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991) ("Functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively."); <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) (the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); 5 U.S.C. § 552(a)(j). Thus, his request for injunctive relief fails.

2. <u>The Plaintiff's Request for Relief Under 28 U.S.C. § 1651</u>

In the complaint, the plaintiff asserts that he seeks relief pursuant to 28 U.S.C. § 1651, commonly known as the "All Writs Act." Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. § 1651. "The remedy of mandamus is a drastic one,

---

immediately implement safety procedures and place him in protective custody; (3) remove him from FCI-Gilmer and place him within a medical facility within 500 miles of his family; and (4) update and document its paperwork acknowledging plaintiff's government informant status.

to be invoked only in extraordinary circumstances." Kerr v.United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d 818, 826 (4th Cir. 1987) (internal quotations omitted). More specifically, the party seeking mandamus relief must demonstrate the following five requirements:

> (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

United States ex rel. Rahman v. Oncology Assocs., P.C., 198 F.3d 502, 522 (4th Cir. 1999).

In this case, the plaintiff presumably seeks to compel the Attorney General, the Director of the BOP and the Warden at FCI-Gilmer, to protect him pursuant to his alleged status as a government informant. However, as noted above, the plaintiff neither has an indisputable right to the relief sought nor do the defendants have a clear duty to the specific act requested. That is not to say that the BOP does not have a duty to ensure the safety and protection of inmates. It simply means that in these particular circumstances, the plaintiff has not shown that the defendants have a clear duty to protect him in the manner in which he claims is warranted. In addition, any remedy available to the plaintiff is more properly raised in a civil rights action. Thus, the plaintiff has other adequate means to attain the relief he desires.

## V. Recommendation

For the reasons stated, the undersigned recommends that the defendants' Motion to Dismiss, or for Summary Judgment [Dckt. 27] be **GRANTED**, that the plaintiff's Motion to Intervene and Protect [Dckt. 26] be **DENIED**, and that the plaintiff's complaint [Dckt. 1] be **DISMISSED with**

**prejudice** from the active docket of this Court.

Within **fourteen (14) days** after being served with a copy of this Opinion/Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 16, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE